An intestate died seised of real estate and the owner of a business conducted under the firm name of himself and a son. He left surviving his widow and nine children; the son continuing the business until the property was burned, paying meantime to the administratrix, who was the widow, $4,000. After the fire such personal property as was not destroyed was sold by the son to a corporation doing the same business, of which corporation he was the general manager, and in which he was a stockholder. The administratrix conceded that the estate was managed under an agreement between her and the children. The testimony showed that the two children who contested the account of the administratrix agreed to permit the profits of the business, if any, to be used by their mother; but there was no evidence of an agreement that the entire personalty should be converted for the benefit of their mother and the other children, who shared what she received with her. *Held*, that the administratrix was properly chargeable with the amount of personalty which came into her hands, and that such amount should be taken as the basis of the estate, subject to credit for sums properly paid out, assets that proved uncollectible, and legitimate loss on sales.

In the matter of the judicial settlement of the estate of James D. Davies, deceased. Decree rendered on statement of the accounts of the administratrix.

Burr, Coombs & Wilson, for petitioners.

Edward A. Richards, for objectors.

Harry I. Huber, for administratrix.

CHURCH, S. The deceased died intestate, notwithstanding that he had drafted and signed a holographic will, as such intended will had never been witnessed in the manner required by statute. He possessed some real estate and was also the sole owner of a certain manufacturing business, although the name of the firm under which such business was conducted was that of "James Davies & Son." There survived him his widow, the administratrix, and nine children, all of whom are now of full age. The examination of the widow disclosed that she knows absolutely nothing in regard to the condition of the estate or the management of the same. In fact, it is conceded in her account that the entire estate was managed in pursuance of a mutual agreement made between all of the children and the widow. The contestants, however, who are two of such children, repudiate the contention that there was any such agreement and ask that the accounts of the administratrix be passed upon and the condition of the estate judicially settled.

It appears that, shortly after the death of the deceased, one of the sons wrote a letter to each of the children, describing the circumstances then existing and declaring that he was formulating a plan for the conduct of the manufacturing business and the settlement of the estate, which he would disclose to his brothers and sisters at a later period. He also invited suggestions from his brothers and sisters in relation to a plan, and stated that, if they did not present any scheme, he would take the matter up and submit one which he had under consideration. It appears, further, that the son, who had been in business with his father, continued such business, paying from time to time sums of money to his mother, the widow, which aggregated in the vicinity of $4,000, and that this business was continued until the property was destroyed by fire. $3,100 was received from the insurance companies, $2,500 of which was for the damage to the buildings, and therefore to be considered as real estate; $600 being for damage to the machinery and personal property used in such business. Immediately after the fire the horses and such few articles as trucks, harness, and the like, which were not destroyed by the fire, were sold to a corporation doing precisely the same character of business, in which this son was a stockholder and also acted as general manager. This destroyed the business completely, and there are no assets of the personal estate remaining for the next of kin.

The contestants repudiate utterly the contention that they agreed that the business should be continued in this manner. They state that, after receiving the first letter, they anticipated receiving other oral or written declaration for their approval of the scheme of manag-

ing such estate. They received none, however, except a suggestion which was made by the writer of the letter, John E. Davies, that it was wise to permit the son, Samuel Davies (who had been in the manufacturing business), to continue the same for six months for the purpose of seeing if the same could be made profitable. The contestants further aver that they were never able to get any account from any one as to the condition of the estate, or of such business, and, realizing that the assets have entirely disappeared and that the business has been destroyed, they have at last been compelled to demand an accounting in this court.

The testimony, on behalf of the administratrix, that there was any definite arrangement to carry on this business is weak and inconclusive. The most that is said is by John Davies, who testified that the contestants were willing that the business should be carried on. But even he admits that this business was being conducted simply for the benefit of his mother, and that, in the event of her death or other termination of the business, the parties would still be entitled to their interest in the same. In other words, the most that can be spelled from his testimony is that the contestants agreed to permit the profits of the business, if any, to be used by their mother; but there is nothing whatever to suggest that they consented to the entire personal estate being converted and delivered for the benefit of their mother and the children who shared with her in what she received therefrom. The conduct of the widow and of the other children (who really acted on her behalf, as it is apparent that she knew nothing in relation to the transaction) in thus conducting this business and absorbing the entirety of the same would be inexplicable, were it not for the letter which this son, John E. Davies, subsequently sent to all of the children when there were complaints made about there being no account or information obtainable about the condition of the affairs of the estate. In this letter he states to them that his mother, as the administratrix, had the right to manage this estate in any way that she pleased; that no person had any right to question her management, except upon her accounting; and that she could make such accounting to suit her pleasure, unless it were shown that she was guilty of a fraud.

The mere statement of this proposition is sufficient to show its incorrectness from a legal point of view. But, with that the belief of the persons managing the estate, their conduct in relation thereto becomes at once apparent. The conduct of the various children who do not object to this account and who were willing that this condition of affairs should be maintained for the benefit of their mother is laudable. But they must be just before they are generous; and, where it appears that the scheme is illegal, the only way of settling the controversy is by applying the legal principles which determine the rules of conduct of the administratrix, and the amount with which she is properly chargeable. The attitude of the contestants herein does not seem to me to be a grasping one, or one in which they are treating their mother and brothers and sisters unfairly. They do not ask, as they properly might, that the administratrix shall be charged with the profits derived from the management of such business. They do not seriously dispute the

valuation which was placed by her on the various articles of personal property, or seek to apply any harsh rule in regard to surcharging her with the disposal thereof. But they do ask that the amount of personal property which came into the hands of the administratrix, and with which she charges herself at the outset of this accounting, should be taken as the basis of this estate, while giving to the administratrix credit for the sums which she has fairly and properly paid out. This contention is not only moderate and considerate, but it is eminently just and regular.

That being so, the summary statement of the accounts of the administratrix should be as follows: She is chargeable with the amount, as stated by her, $7,391.66. She is to be credited with the amount of Schedule D, $1,658.06, and also with the sum of $410 on the promissory note of West, which she was unable to collect, and also with the amount of legitimate loss on the sale of the horses and trucks of the sum of $24.50.

Let findings and decree be, therefore, prepared in accordance with the views herein expressed.

Decreed accordingly.